Submitted March 6, affirmed December 18, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROMAN VASILYERICH SENIN,
*Defendant-Appellant.*

Washington County Circuit Court
16CR26172; A165358

456 P3d 334

Appealing from a judgment of conviction for possession of heroin, ORS 475.854, defendant assigns error to the trial court's denial of his motion to suppress evidence that he contends derived from (1) an unlawfully extended traffic stop and (2) an illegally conducted search of his car, both in violation of Article I, section 9, of the Oregon Constitution. *Held*: (1) The police order for defendant to get back into his car at the outset of the traffic stop did not unlawfully extend the encounter; and (2) the subsequent search of defendant's car was validly excepted from the warrant requirement as one conducted incident to an arrest. Accordingly, the trial court properly denied defendant's motion to suppress.

Affirmed.

Kirsten E. Thompson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the briefs for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Kistler, Senior Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Appealing from a judgment of conviction for possession of heroin, ORS 475.854, defendant assigns error to the trial court's denial of his motion to suppress evidence that he contends derived from (1) an unlawfully extended traffic stop and (2) an illegally conducted search of his car, both in violation of Article I, section 9, of the Oregon Constitution. We conclude, first, that the police order for defendant to get back into his car at the outset of the traffic stop did not unlawfully extend the encounter and, second, that the subsequent search of defendant's car was validly excepted from the warrant requirement as one conducted incident to an arrest. Accordingly, the trial court properly denied defendant's motion to suppress, and we affirm.[1]

We review a trial court's denial of a motion to suppress for legal error and are bound by that court's findings of historical facts if there is evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). In the absence of express findings, we presume that the trial court found the facts consistently with its ultimate conclusion. *Id.* at 166. Consistently with those standards, we state the uncontroverted facts as recounted by the officers at the suppression hearing.

On the night giving rise to this matter, defendant drove into the parking lot of a Hillsboro convenience store, where Officer Weed was sitting in his patrol car. As defendant passed by, Weed observed that defendant's car had nonfunctioning license plate lights, so he activated his overhead lights and stopped defendant. As soon as defendant pulled into a parking space, the lone passenger in the car got out and walked towards the convenience store.[2] The passenger never returned during the encounter. Weed parked behind

---

[1] We affirm without discussion the remaining two assignments of error that defendant raised in his opening brief. We reject on the merits the additional assignment of error that defendant raised in his supplemental brief asserting that the trial court plainly erred by instructing the jury that it could return a nonunanimous verdict.

[2] The record is unclear as to whether defendant stopped his car in response to Weed's police activity. It is also unclear whether the passenger was aware of Weed's presence, although the record reflects that defendant, when he first drove into the parking lot, had seen Weed.

defendant's car, blocking defendant in against the store building. As defendant got out of the car, Weed observed something drop out of defendant's lap onto the ground outside of the car; at the time, Weed believed the dropped item to be a piece of trash. Defendant started to walk back towards Weed, leading Weed to order, "Get back in your car." Weed issued the order as a safety precaution, in light of his attention being split between defendant's movement and the passenger's potential return. Defendant complied. Weed then approached the driver-side window to ask for defendant's driver license, proof of insurance, and registration information. While defendant looked for the requested documents, Weed asked defendant where he was coming from. Defendant answered that he was heading from Beaverton to Portland, which did not make sense to Weed given that both those areas were east of their Hillsboro location.

By this time, Officer Mace had arrived to back up Weed. While Weed collected the information from defendant, Mace spotted a syringe cap in the passenger side of the car; he notified Weed of the discovery. Weed handed defendant's documents to Mace and asked Mace to process the citation. While looking over the documents, Mace asked defendant whether he was diabetic. Defendant responded "no" but stated that a friend—whom he could not name—was. Mace returned to the patrol car to process the citation while Weed asked defendant for, and was denied, consent to search the car for drugs. Weed then asked for a drug-detection dog to be sent to the location.[3]

Eventually, Mace signaled for Weed—as the officer who initiated the traffic stop—to sign the citation. As Weed

[3] Although the precise sequence of events relating to the officers' inquiries and handling of the citation and to defendant's production of documents is unclear from the record, that is inconsequential to our analysis, because defendant does not posit that any police conduct during that exchange unlawfully extended the traffic stop. Rather, defendant contends only that Weed's order at the outset of the stop caused the unlawful extension.

Similarly, because defendant does not advance the argument, we do not address whether the officers' inquiries were reasonably related to the traffic stop or justified by a constitutional basis independent of that underlying the stop, as the Supreme Court recently announced is required when an officer makes "investigatory inquiries" during a traffic stop. *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019) (abrogating the "unavoidable lull" doctrine).

was signing the citation, he noticed a syringe lying on the ground beneath the driver's door, where he had observed something drop from defendant's lap earlier. The parking lot was well-lit, and the syringe was the only object lying there. The syringe lacked a cap, had a bent needle, and contained blood-like liquid residue. Based on Weed's training and experience, users of needles for medical purposes, such as diabetes, do not leave their needles lying loose; instead, that behavior is associated with illicit drug users. Weed also knew from his training and experience that illicit drug users often leave residual substance in the syringe for later reinjection.

Instead of issuing the finished citation or otherwise interacting with defendant, Weed field-tested the syringe, which took about two minutes and yielded a presumptive-positive result for heroin. Weed approached defendant and asked him about the syringe, ownership of which defendant denied—stating that it belonged to a friend—but he eventually admitted to having dropped it. Around that time, the drug dog arrived, and Weed asked defendant to step out of the car, handcuffed him, and placed him in the back of the patrol car. The officers then let the drug dog into defendant's car, where it alerted to the center console, on top and inside of which the officers discovered drug substance and paraphernalia. Defendant was subsequently charged with unlawful possession of heroin.

Pretrial, and as relevant to the sole assignment of error that we write to address, defendant sought to suppress the seized evidence, arguing that it was the fruit of both an unlawfully extended traffic stop and an illegally conducted car search. The trial court rejected defendant's arguments, finding that "the detention of the defendant in the car after the stop of the car was reasonable under the circumstances of [the] stop and the quick exit of the passenger and defendant coming toward the officer." Additionally, the trial court determined that both the automobile and the search-incident-to-arrest exceptions to the warrant requirement justified the search of defendant's car. Accordingly, the court denied defendant's motion to suppress, and a unanimous jury ultimately convicted defendant as charged.

On appeal, defendant again argues that the seized evidence was the fruit of both an unlawfully extended traffic stop and an illegally conducted car search. As to the first contention, defendant concedes that the initial stop was lawful; however, defendant posits, Weed impermissibly extended that otherwise lawful stop by ordering him to get back into his car at the outset of the stop without valid officer-safety concerns. As to the second contention, defendant maintains that the officers lacked probable cause to search his car and that, in any event, neither the automobile exception nor the search-incident-to-arrest exception justified the warrantless search. Both contentions lack merit.

Article I, section 9, allows an officer to lawfully stop a person for a noncriminal traffic violation to investigate the offense and issue a citation without a warrant. *State v. Rodgers/Kirkeby*, 347 Or 610, 623-24, 227 P3d 695 (2010). However, the officer's activities during the stop must "be reasonably related to that investigation and reasonably necessary to effectuate it. If the officer's activities exceed those limits, then there must be an independent constitutional justification for those activities." *State v. Watson*, 353 Or 768, 781, 305 P3d 94 (2013); *see also State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019) (extending the same limits to investigative inquiries). Officer safety is one recognized constitutional justification for police activities unrelated to the traffic investigation at hand. *See State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (discussing the officer-safety exception to the warrant requirement). Here, defendant argues that Weed's order for him to get back into his car at the outset of the stop unlawfully extended the stop but was not justified by valid officer-safety concerns. However, our conclusion that Weed's order was reasonably related to the traffic investigation, as explained below, obviates the need to reach that argument. *See Rodgers/Kirkeby*, 347 Or at 624 ("Police conduct during a noncriminal traffic stop does not further implicate Article I, section 9, so long as the detention is limited and the police conduct is reasonably related to the investigation of the noncriminal traffic violation.").

Defendant relies on two cases in advancing his contention that Weed issued the order as an alternative to

proceeding with the traffic investigation and thereby unlaw-fully extended the stop. In *State v. Reich*, 287 Or App 292, 294, 403 P3d 448 (2017), while the car owner was looking for proof of insurance, the officer asked him for consent to search the car. After the car owner consented and, along with the defendant, got out of the car unprompted, the offi-cer asked them for consent to search their persons. *Id.* at 294-95. We concluded that the officer's request for consent to conduct the personal searches unlawfully extended the traffic stop, because "the officers switched their focus to investigate an unrelated matter—the crime of possession of a controlled substance—as an alternative to going for-ward with the next step in processing the traffic violation." *Id.* at 302 (citation and quotations omitted). And in *State v. Steffens*, 250 Or App 742, 747-48, 282 P3d 888 (2012), we held that the officer unlawfully extended the stop when he inquired, unrelatedly, about possession of weapons rather than continue gathering the information necessary to pro-cess the bicycle infraction.

The cases on which defendant relies are readily dis-tinguishable. Here, Weed's order for defendant to get back into his car occurred early in the encounter and facilitated the traffic investigation, which required Weed to obtain doc-uments from defendant. In contrast, in *Reich* and *Steffens*, the officer's conduct occurred partway through or near the end of the encounter and deviated from the purpose of the traffic investigation. Weed's order did not change the nature of the investigation—from traffic to criminal—in any per-ceivable way and, without more, is no less permissible than a routine request for cooperation. Moreover, neither as a temporal nor practical matter did Weed's order lengthen the duration of the stop, because defendant inevitably would have had to reenter his car to retrieve the requested docu-ments. Thus, we conclude that Weed's order was reasonably related to and did not constitute an unlawful extension of the traffic stop.

We next address whether the search of defen-dant's car was supported by probable cause, as required by Article I, section 9. Objective probable cause exists if the totality of the circumstances would "lead a reasonable

person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach*, 298 Or 375, 381, 692 P2d 602 (1984); *State v. Miller*, 265 Or App 442, 446, 335 P3d 355 (2014). Defendant argues that no probable cause existed here, "because needles are not unlawful to possess and there is no basis to say that they were in defendant's possession." We conclude, however, that the totality of the circumstances did give rise to probable cause that justified the search of defendant's car.

To be more specific, the facts before the officers when they decided to search defendant's car included that, while getting out of his car, defendant had dropped an uncapped syringe that had attributes consistent with illegal drug use and inconsistent with legal medical use (loose needle, bent sharp, blood-like liquid residue); defendant stated that he was not diabetic and could not name the friend who he asserted was diabetic; the syringe field-tested positive for heroin; a syringe cap was in the passenger side of the car; and defendant gave an illogical response when asked where he was coming from. Those facts, viewed as a whole, gave rise to probable cause for the search.

Nevertheless, to conduct a warrantless search, Article I, section 9, requires more than probable cause; an exception to the warrant requirement must also apply. Here, the trial court concluded, and the state maintains on appeal, that both the automobile and the search-incident-to-arrest exceptions apply to justify the search of defendant's car. In contrast, defendant contends that neither exception applies. Because we conclude, as we discuss below, that the officers lawfully conducted the warrantless search incident to arresting defendant, we need not consider whether the automobile exception applied.

"A warrantless search incident to arrest can be made for any of three purposes: (1) to protect a police officer's safety; (2) to prevent the destruction of evidence; or (3) to discover evidence of the crime of arrest." *State v. Mazzola*, 356 Or 804, 811, 345 P3d 424 (2015) (citation omitted). "To pass constitutional muster, such a search must relate to a crime that there is probable cause to believe the arrestee has committed, and it must be reasonable in scope, time,

and intensity." *Id.* at 811-12. As an initial matter, we note that the parties do not dispute that the search in this case was conducted to discover evidence of the crime of arrest. And, as we discussed above, the search was supported by probable cause. Lastly, defendant forwards no specific argument challenging the reasonableness of the search in terms of scope, time, or intensity. Instead, defendant makes only the narrow argument that a search incident to arrest conducted to discover evidence of the crime of arrest must meet a fourth requirement of "exigency" and that no exigency existed here.

As defendant acknowledges, the majority in *State v. Krause*, 281 Or App 143, 146, 383 P3d 307 (2016), *rev den*, 360 Or 752 (2017), rejected that proposition, stating that exigency relates to only the first two purposes of the search-incident-to-arrest exception. In urging us to reject that precedent, defendant relies solely on case law that the court had considered in *Krause* and on the dissent's rationale for disagreeing with the majority. But, in the absence of new and developed arguments in support of defendant's position, we decline to revisit the *Krause* decision.

As the law stands, a warrantless search for the purpose of discovering evidence of the crime of arrest "may be justified even if the defendant has been removed from the area in which an officer believes that evidence may be located[,]" so long as "the evidence reasonably could be found in that area and the search is otherwise reasonable in time, scope, and intensity." *Id.* at 146 (citations omitted). Here, the search was supported by probable cause (as discussed above), occurred immediately after defendant was placed under arrest, and was confined to the center console area to which the drug dog had alerted. Considering those circumstances, the warrantless search of defendant's car was incident to his arrest and comported with Article I, section 9.

In sum, the police order for defendant to get back into his car at the outset of the stop was reasonably related to the traffic investigation and did not render the stop unlawful. Additionally, the warrantless search of defendant's car was justified by the search-incident-to-arrest exception.

Accordingly, the trial court did not err by denying defendant's motion to suppress.

Affirmed.