Submitted February 11, reversed and remanded September 22, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GUY DAVID ALLEN, JR.,
aka Guy Allen, aka Guy David Allen,
*Defendant-Appellant.*

Coos County Circuit Court
18CR61339; A170276

497 P3d 777

Defendant appeals from a judgment convicting him of unlawful possession of methamphetamine, ORS 475.894(2)(b), and felon in possession of a restricted weapon, ORS 166.270(2). He challenges the denial of his motion to suppress evidence obtained during a traffic stop. Defendant, who was a passenger, argues that he was unlawfully seized when officers deployed a drug-detection dog during a traffic violation investigation for failing to signal before turning. *Held*: Defendant was seized for purposes of Article I, section 9, of the Oregon Constitution and the seizure was unlawful under *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019), because there was no independent constitutional justification for an investigation by a drug-detection dog. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Martin E. Stone, Judge.

Larry R. Roloff filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and David B. Thompson, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment convicting him of unlawful possession of methamphetamine, ORS 475.894(2)(b), and felon in possession of a restricted weapon, ORS 166.270(2). He challenges the denial of his motion to suppress evidence obtained during a traffic stop. Defendant, who was a passenger, argues that he was unlawfully seized when officers deployed a drug-detection dog during a traffic violation investigation for failing to signal before turning. *See State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019) (concluding that investigative activities and inquiries during a traffic stop must be reasonably related to the purpose of the stop or be supported by an independent constitutional justification). Because there was no independent constitutional justification for an investigation by a drug-detection dog, we reverse and remand.

We review the trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). To the extent that the trial court did not make express findings, we will "presume that the trial court found the facts consistently with its ultimate conclusion," if there is evidence to support those findings. *State v. Senin*, 301 Or App 358, 359, 456 P3d 334 (2019). We state the facts in accordance with those standards.

In January 2018, the South Coast Interagency Narcotics Team or SCINT was watching a residence in the Bunker Hill area of Coos County. They saw a white Ford Expedition leave the residence and contacted Oregon State Police and K-9 unit of the Coos Bay Police Department to give them a description of the vehicle and to see if they would be able to stop the vehicle.

Troopers Waldrop and Cordes were on duty in the area and observed the Ford fail to signal continuously for at least 100 feet before turning right pursuant to ORS 811.335. Waldrop initiated a stop and spoke to the driver of the Ford. Defendant was sitting in the passenger seat and there was another occupant sitting in the back. Meanwhile, Cordes

approached the Ford from the passenger side, where defendant was sitting. After informing the driver of the reason for the stop and before going back to his patrol car to begin processing the citation, Waldrop told all of the occupants, "For your safety, remain in the vehicle. I'll be right back with you."

Within two minutes of the stop, Officer Looney of the Coos Bay Police Department arrived with Katie, a drug-detection dog. During the drug-sniff walk, Katie alerted to the odor of drugs coming from the vehicle. At that point, the officers shifted from conducting a stop for a traffic infraction investigation to a drug investigation. Officers discovered a substantial quantity of methamphetamine and a small amount of heroin. Along with the drugs, officers also found a knife on defendant's person and he was ultimately charged with several drug-related crimes, as well as felon in possession of a restricted weapon.

Defendant moved to suppress all of the evidence obtained during the stop under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[1] He argued that the traffic stop was made without probable cause and that the stop was "unnecessarily lengthened by the use of the [drug-detection] dog, which was brought on scene without probable cause." Defendant also argued that "from the minute [defendant was] stopped it was a drug investigation under the guise of a traffic stop," and that the law should not allow police to bring a dog to a traffic violation investigation, when "there [is] no reason for the dog to be there." In response, the state argued that the officers had probable cause to make the stop

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

and that the dog sniff occurred during a lull and did not add any time to the stop.

After a hearing, the trial court denied defendant's motion to suppress.[2] Ultimately, a jury convicted defendant of unlawful possession of methamphetamine and felon in possession of a restricted weapon. Defendant subsequently initiated this appeal.

On appeal, defendant argues that the officer's use of a drug-detection dog was not reasonably related to the reason for the stop, *i.e.*, the failure to signal.[3] Relying on *Arreola-Botello*, defendant further asserts that the "purpose of the stop was never about a traffic violation and was, from the beginning, a drug investigation" in which the officers lacked probable cause or an independent constitutional justification for the search. In response, the state does not address defendant's arguments under *Arreola-Botello*; however, it asserts that defendant's argument incorrectly assumes that "he, as a passenger, was seized when police stopped the car for a traffic infraction."

Article I, section 9, establishes the right to be secure against "unreasonable search, or seizure." Because passengers "in cars that are stopped for traffic violations are not themselves automatically stopped for purposes of Article I, section 9," we start by addressing whether defendant, in this case, was seized. *State v. Payne*, 310 Or App 672, 678, 487 P3d 413, *rev den*, 368 Or 514 (2021). To determine whether police exercised "their authority to detain [a] passenger, we look to the totality of the circumstances"; that includes, but is not limited to, "the manner of the stop and the type of questions or physical acts by the officer." *Id.* at 679. Ultimately, if passengers "would understand that the officer's show of authority in stopping the driver extended to

---

[2] At the suppression hearing, defendant maintained that the driver's turn signal had been on for more than 100 feet before turning right, and he presented testimony from witnesses of that fact. The trial court ultimately found Waldrop's testimony more credible. Although defendant challenges the court's credibility determination, our conclusion that the trial court erred in denying defendant's motion to suppress obviates the need to address that issue.

[3] Defendant raises two other assignments of error in his opening and supplemental briefs; however, our resolution of defendant's challenge to the denial of his motion to suppress obviates the need to address them.

them or that the officer was independently restricting their movement apart from the stop of the driver," then the passengers were seized. *Id.*

In this case, Waldrop instructed all of the occupants, including defendant, to stay in the vehicle until he returned. Under the circumstances of this case, Waldrop's command combined with Cordes's act of coming up to the passenger side of the vehicle when Waldrop approached the driver's side communicated to defendant that the officers' show of authority extended to him as well. *See, e.g.*, *State v. Backstrand*, 354 Or 392, 401, 313 P3d 1084 (2013) (explaining that an officer seizes a person under Article I, section 9, if the officer conveys to the person "either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs"). Accordingly, we conclude that defendant was seized for purposes of Article I, section 9.

Having determined that defendant was seized, we turn to whether the seizure was lawful and conclude that under *Arreola-Botello* it was not. In *Arreola-Botello*, the Supreme Court held that, "for the purposes of Article I, section 9, all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations." 365 Or at 712. As the court explained, "[i]t is the justification for the stop that delineates its lawful bounds," and by "applying subject-matter limitations to investigative activities and questioning, Article I, section 9, ensures that officers do not turn minor traffic violations into criminal investigations." *Id.* at 712 n 7, 713.

In that regard, "absent an independent constitutional justification, a drug-detecting dog * * * generally cannot, consistent with Article I, section 9, sniff a car for drugs during a traffic stop." *State v. Soto-Navarro*, 309 Or App 218, 223, 482 P3d 150 (2021); *see also State v. Escudero*, 311 Or App 170, 173, 489 P3d 569 (2021) (concluding that the deployment of a drug dog eight seconds into a traffic stop was an unconstitutional investigative action, because the officer had not "developed any independent constitutional justification to investigate anything beyond the traffic

infraction"). Here, officers deployed a drug-detection dog during a traffic stop for failing to signal continuously for at least 100 feet before turning—without articulating any independent constitutional justification. Moreover, the state has not identified any theory or pointed us to any facts that, for purposes of Article I, section 9, would justify the seizure. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.